UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KIMBERLY SCHOEBEL,**

    Plaintiff,

vs.

                                                Case No. 8:14-cv-426-T-27AEP

**AMERICAN INTEGRITY INSURANCE
COMPANY OF FLORIDA,**

    **Defendant.**
_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion for Summary Judgment (Dkt. 30), to which Plaintiff has responded in opposition (Dkt. 41). Upon consideration, Defendant's motion is **GRANTED** *in part* on Plaintiff's FMLA claims and ADA/FCRA retaliation claims. Ruling on the remaining claims is deferred pending the parties' supplemental briefing.

### *Background*

Kimberly Schoebel worked as a claims adjuster for American Integrity Insurance Company of Florida ("Defendant"). (Dkt. 31 at 42; Dkt. 33-1). Three days after she returned from medical leave, she was terminated for inappropriate conduct and violation of company policy. (Dkt. 34 at 7; Dkt. 34-15; Dkt. 41-17). She claims that she was subject to disparate treatment, failure to accommodate, retaliation, and interference in violation of the Family Medical Leave Act ("FMLA"), Americans with Disabilities Act ("ADA"), and Florida Civil Rights Act ("FCRA"). (Dkt. 16).

### *Standard*

Summary judgment is appropriate where "there is no genuine dispute as to any material fact

1

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine factual dispute exists only if a reasonable fact-finder 'could find by a preponderance of the evidence that the [non-movant] is entitled to a verdict.'" *Kernel Records Oy v. Mosley*, 694 F.3d 1294, 1300 (11th Cir. 2012) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). A fact is material if it may affect the outcome of the suit under the governing law. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). All facts are viewed and all reasonable inferences are drawn in the light most favorable to the non-moving party, here, Plaintiff. *See Scott v. Harris,* 50 U.S. 372, 378 (2007).

*Discussion*

A.  **FMLA**

Section 2615(a) of the FMLA creates two distinct types of claims: interference claims and retaliation claims. 29 U.S.C. § 2615(a); *Hurlbert v. St. Mary's Health Care Sys.*, 439 F.3d 1286, 1293 (11th Cir. 2006). An employee claiming retaliation alleges that the employer discriminated against her because she engaged in activity protected by the FMLA. An employee claiming interference alleges that her employer denied or otherwise interfered with her substantive rights under the FMLA. *Id.* Plaintiff brings claims for both retaliation and interference.

1.  *Retaliation*

To prevail on a retaliation claim under the FMLA, the employee must demonstrate that the employer's actions were motivated by a retaliatory animus. *Martin v. Brevard Cnty. Publ. Sch.*, 543 F.3d 1261, 1267-68 (11th Cir. 2008). Absent direct evidence of retaliatory intent, the *McDonnell Douglas* burden-shifting framework applies. *Id*. at 1268. To establish a *prima facie* case of retaliation, the employee must show that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) *the decision was causally related to the protected*

*activity*. (emphasis added). If a plaintiff establishes a *prima facie* case, the employer must articulate a legitimate, non-discriminatory reason for the challenged employment action. *See Martin*, 543 F.3d at 1268; *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010). If the employer discharges its burden, the plaintiff must produce evidence that would permit a reasonable factfinder to conclude that the employer's proffered reason is a mere pretext for unlawful discrimination. *Id.*

    a.    ***Prima facie case***

Defendant does not dispute that Schoebel engaged in statutorily protected activity by taking FMLA leave or that she suffered an adverse employment action. Nor does Defendant contend that she was not entitled to FMLA benefits (Dkt. 30 at 22-24).[1] Rather, Defendant contends that Schoebel is unable to show a causal connection between her FMLA leave and termination and therefore fails to establish a *prima facie* case of retaliation. More specifically, Defendant argues that Schoebel's inappropriate emails severed any causal connection between her FMLA leave and termination which might otherwise be inferred from the temporal proximity of her leave and termination.

This dispute is therefore about whether Schoebel presented sufficient evidence to create a genuine issue of fact that she was terminated because she took FMLA leave, "which means: could a jury reasonably find from the evidence presented at the summary judgment stage that [Schoebel] was fired because she [took] FMLA leave?" *Brungart v. BellSouth Telecommunications, Inc.*, 231 F.3d 791, 798 (11th Cir.), *cert. denied*, 532 U.S. 1037 (2001). I conclude that Schoebel fails to identify a genuine issue of fact about causation, and therefore no reasonable jury could find that she was fired because she took FMLA leave. Schoebel fails to make a *prima facie* showing of FMLA

---

[1] Defendant does note that, according to Quinn, Plaintiff was approved for FMLA leave "a few days before her true eligibility date" (Dkt. 34 at 38).

retaliation.

To demonstrate causation, Schoebel relies solely on the close temporal proximity between her return from FMLA leave and her termination. (Dkt. 41 at 9). Generally, close temporal proximity between an employee's protected conduct and an adverse employment action is circumstantial evidence giving rise to an inference of causation. *Brungart,* 231 F.3d at 799. *Thomas v. Cooper Lighting, Inc.,* 506 F.3d 1361, 1364 (11th Cir. 2007) (burden of causation can be met by showing close temporal proximity between statutorily protected activity and the adverse employment action); *Hurlbert*, 439 F.3d at 1298. The inference of causation from close temporal proximity is ordinarily sufficient to avoid summary judgment. *Brungart*, 231 F.3d at 799 ("The general rule is that close temporal proximity between the employee's protected conduct and the adverse employment action is sufficient circumstantial evidence to create a genuine issue of material fact of a causal connection."). And the three days that passed between Schoebel's return and her termination is certainly "very close." *See Clark County Sch. Dist. v. Breeden,* 532 U.S. 268, 273 (2001) (temporal proximity, without more, must be "very close").

Notwithstanding, intervening acts of misconduct can break the causal connection (if any) between protected activity and an adverse employment action. *See Henderson v. FedEx Express*, 442 Fed. App'x 502, 506 (11th Cir. 2011) (while close temporal proximity between protected activity and adverse action may be sufficient to show that the two were not wholly unrelated, intervening acts of misconduct can break any causal link between protected conduct and adverse employment action); *Hankins v. AirTran Airways, Inc.,* 237 Fed. App'x. 513, 520 (11th Cir. 2007) ("close temporal proximity between two events, standing alone, is not a panacea, absent any other evidence that the employment decision was causally related to the protected activity.").

Accordingly, absent intervening misconduct on her part, the close temporal proximity between Schoebel's return from leave and her termination would be sufficient to raise a genuine issue of material fact as to causation, and shift the burden to Defendant to demonstrate that she was fired for non-retaliatory reasons. *See Martin*, 543 F.3d at 1268; *Schaaf v. Smithkline Beecham Corp.*, 602 F.3d 1236, 1243 (11th Cir. 2010). In this case, however, Schoebel's inappropriate emails constitute intervening misconduct which severed any causal connection which might otherwise be inferred from the close temporal proximity of her FMLA leave and termination. The emails were discovered while she was on leave and Heller and Quinn planned to confront Schoebel with discipline in mind when she returned.[2]

That intervening acts of misconduct can break the causal connection between protected conduct and an adverse employment action is understandable, and consistent with the nature of an evidentiary inference. An inference is defined as "a conclusion reached by considering other facts and deducing a logical consequence from them." *i.e.* "the process of thought by which one moves from evidence to proof." *Black's Law Dictionary* (10th ed. 2014). The question therefore is whether reasonable jurors could deduce solely from the close temporal proximity between Schoebel's return from FMLA leave and her termination that one caused the other, in the face of the undisputed evidence that her inappropriate emails resulted in her termination. The answer is decidedly no, since reasonable jurors could not differ on the question. *See Helene Curtis Industries, Inc. v. Pruitt,* 385

---

[2] Schoebel does not argue that Defendant's more lenient treatment of Paul Roberts, who also sent inappropriate emails, or the factual dispute over whether she showed remorse after being confronted with the emails demonstrates additional evidence of causation. Rather, she correctly argues those points to support factual disputes supporting pretext. That evidence would be relevant to whether Defendant's proffered non-retaliatory reasons for her termination were pretextual, the last step in the *McDonald-Douglas* burden shifting analysis. But Schoebel must make a *prima facie* showing of FMLA retaliation before that step in the analysis is reached, which she has failed to do.

F.2d 841, 850 (5th Cir.), *cert. denied*, 391 U.S. 913 (1968) ("The test employed by the Fifth Circuit is that a fact issue must be submitted to the jury if reasonable men could differ on the conclusions to be reached from the evidence presented.").

An inference arising from circumstantial evidence must reasonable. *Daniels v. Twin Oaks Nursing Home*, 692 F.2d 1321, 1326 (11th Cir. 1982). Whether an inference is reasonable is determined by " whether it is one that 'reasonable and fair-minded men in the exercise of impartial judgment' might draw from the evidence." *Id*. (quotation omitted). And while circumstantial evidence may support two equally probable inferences from which a jury may choose, "a jury is not permitted to engage in a degree of speculation and conjecture that renders its finding a guess or mere possibility." *Id*.

According to Schoebel, causation must be inferred solely from the three days between her return from leave and her termination, that is, one must deduce solely from the close temporal proximity that there is a causal relationship between the two. But she ignores the undisputed evidence that her inappropriate emails triggered the disciplinary process which ultimately resulted in her termination, wholly unrelated to her FMLA leave. Where, as here, circumstantial evidence supports an inference of fact, *i.e.* causation, but direct evidence proves the contrary, the inference has been shown to be unreasonable. *See Pruitt*, 385 F.2d at 851 ( "[A]n inference is unreasonable if it is at war with uncontradicted or unimpeached facts."); *Kuykendall v. United Gas Pipe Line Co.*, 208 F.2d 921, 924 (5th Cir. 1954) ("Although the circumstances may support the inference of a fact, if it is shown by direct unimpeached, uncontradicted, and reasonable testimony which is consistent with the circumstances that the fact does not exist, no lawful finding can be made of its existence."). It follows, and I conclude, that Schoebel fails to demonstrate causation, and has not presented a

*prima facie* case of FMLA retaliation.[3]

Defendant's motion for summary judgment is accordingly granted on Schoebel's FMLA retaliation claim (Count II).

## *2.    Interference*

To establish an interference claim under the FMLA, an employee need only demonstrate, by a preponderance of the evidence, that she was entitled to a benefit under the FMLA, and that she was denied that benefit. *Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206-07 (11th Cir. 2001). In contrast to an FMLA retaliation claim, the employee is not required to demonstrate that the employer intended to deny the benefit. *Krutzig v. Pulte Home Corp.*, 602 F.3d 1231, 1235 (11th Cir. 2010). The employer's motives are irrelevant. *Hurlbert v. St. Mary's Health Care System, Inc.*, 439 F.3d 1286, 1293 (11th Cir. 2006).

The crux of Schoebel's FMLA interference claim is that she was not reinstated to an equivalent position because she was fired three days after returning to work. (Dkt. 16 at ¶ 21; Dkt. 41 at 11). However, the undisputed evidence establishes that she was granted the FMLA leave she requested, it was extended an additional week at her request, and when she returned to work, she was reinstated to the same position. She was terminated only after being confronted with the emails. She was never denied FMLA rights. Absent other evidence, she fails to make even a *prima facie* showing of FMLA interference. Her interference claim necessarily depends, therefore, on whether there is evidence that she was terminated (and therefore not reinstated to her former position) because she

---

[3] By analogy, where there is unrebutted evidence that a decision maker was unaware that an employee engaged in protected conduct, the inference of causation arising from close temporal proximity is destroyed. *See Brungart*, 231 F.3d at 799-800 (to allow this inference "means that we should allow the fact finder to decide without any basis other than temporal proximity, that the decision maker is lying.").

took FMLA leave. Like her retaliation claim, she fails to make out a *prima facie* case of FMLA interference.[4]

Relevant to Schoebel's interference claim, an employee has the right, following FMLA leave, "to be restored by the employer to the position of employment held by the employee when the leave commenced" or an equivalent position. 29 U.S.C. § 2614(a)(1)(A); 29 C.F.R. § 825.214(a); *Jarvela v. Crete Carrier Corp.*, 754 F.3d 1283, 1289 (11th Cir. 2014). The right to reinstatement is not absolute, however. *Krutzig v. Pulte Home Corp.*, 602 F.3d at 1236. An employer may deny reinstatement "if it can demonstrate that it would have discharged the employee even if he had not been on FMLA leave." *Jarvela*, 776 F.3d at 831. For example, an employer may discharge an employee if the employer discovers deficiencies in the employee's job performance while the employee was on leave. *Schaaf*, 602 F.3d at 1243.

That is what happened here. Schoebel's inappropriate emails were discovered while she was on leave, but the decision to terminate her was made <u>after</u> she was reinstated, for reasons wholly unrelated to her FMLA leave. Defendant maintains that she was terminated, rather than reprimanded, because she showed no remorse for the emails. Schoebel maintains she apologized. While the evidence on remorse is disputed, the dispute is not material for purposes of summary judgment on Schoebel's interference claim, since an employee may be discharged for good reason, bad reason or no reason, so long as the reason is not discriminatory. *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1187 (11th Cir. 1984). Stated another way, even if Heller and Quinn are mistaken or

---

[4] Although this claim is duplicative of Schoebel's FMLA retaliation claim, this Circuit recognizes that the two claims may be pursued in the alternative. *Schaaf*, 602 F.3d at 1243 ("Under this alternate theory, Schaaf casts her demotion not as interference with her FMLA rights, but rather as retaliation for exercising those statutory rights"); *Hawkins v. BBVA Compass Bancshares, Inc.*, No. 14-14480, ___ Fed. App'x ___, 2015 WL 3462294, at *9 (11th Cir. Jun. 2, 2015) (observing that interference claim was "largely a clone" of retaliation claim, but disposing of appeal on the merits).

wrong about whether Schoebel showed remorse, their decision to terminate her had nothing to do with her FMLA leave and everything to do with the emails she authored.

As was discussed with respect to the FMLA retaliation claim, Schoebel's inappropriate emails, not her FMLA leave, set in motion the events leading to her termination. That she was terminated, as opposed to some lesser discipline like Roberts, is of no moment, since any issue of fact concerning Defendant's reasons for termination is immaterial to Schoebel's interference claim. *See Hawkins*, 2015 WL 3462294, at *9 ("Plaintiff also failed to establish an interference claim because it is undisputed that Defendant would have terminated her regardless of any FMLA leave she took or requested.").

Schoebel asserts that when she returned to work, she immediately "began experiencing retaliation" and "Defendant never returned Plaintiff to an equivalent position upon her return from FMLA leave." (Dkt. 41, at 5). She claims she was forced to sit at a different desk with no working phone, and without a working computer . . ." (*Id.* at 6.) These assertions, at least in the context of her FMLA interference claim, are contradicted by the undisputed facts.

Defendant's argument that Schoebel was reinstated to an equivalent position is supported by the undisputed facts. Although Schoebel testified that when she returned to work she was assigned a different desk and was initially without a telephone or a working computer (Dkt. 31 at 91-93), the undisputed evidence establishes that her assignment to a different cubicle was only temporary and part of a larger reorganization to accommodate new employees in the claims department. And Windham, her temporary replacement, was contracted to stay on for a brief period of time only to assist in the transition of files back to Schoebel, so that "60, 80, 100 files" were not immediately "back on Kim." (Dkt. 33 at 22-23; Dkt. 34 at 10-11). Moreover, Schoebel was able to use her

9

computer later that day, was provided files to review, and had a phone by Tuesday or Wednesday. (Dkt. 31 at 94-98). The brief delay in providing her a computer and phone does not constitute an adverse employment action, since she suffered no compensable damage as a result of the delay. *See Drago v. Jenne*, 453 F.3d 1301, 1307 (11th Cir. 2006). In any event, none of this is shown to have been related to her FMLA leave.

Schoebel does not, and could not, take issue with the fact that her inappropriate emails triggered the events resulting in her termination. She quarrels only with Defendant's stated reasons for terminating her rather than imposing some lesser discipline. Even assuming, for purposes of summary judgment, that Schoebel's version of the facts is true, and that she did express remorse, Defendant's reason for terminating her remains wholly unrelated to her FMLA leave. In sum, she presents no evidence from which a reasonable jury could conclude that her termination was related in any way to her FMLA leave.

While Schoebel quarrels with whether she showed remorse, or refused to promise not to engage in such activity in the future, it cannot be disputed that the emails were the proximate cause of her termination. *Schaaf*, 602 F.3d at 1242 ("In an FMLA interference case, courts examine not whether the FMLA leave was the *but-for* cause of an employee's discharge or demotion, but rather whether it was the *proximate* cause.") (emphasis in original). She was confronted and disciplined because of the emails, a reason "wholly unrelated to the FMLA leave." *Spakes v. Broward Cnty. Sheriff's Office*, 631 F.3d 1307, 1309–10 (11th Cir. 2011).

Defendant's motion for summary judgment is accordingly granted on Schoebel's FMLA interference claim (Count I).

B. **ADA & FCRA Retaliation Claim**

In addition to her FMLA claims, Schoebel brings retaliation claims under the ADA and FCRA, which are analyzed using the same framework. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255 (11th Cir. 2007). Because the relevant events took place after the ADA Amendments Act of 2008 ("ADAAA") became effective on January 1, 2009, the post-ADAAA version of the ADA governs. *Mazzeo v. Color Resolutions Int'l, LLC*, 746 F.3d 1264, 1267 (11th Cir. 2014). For the same reason Plaintiff fails to make a *prima facie* FMLA retaliation claim, her ADA and FCRA retaliation claims fail.

The ADA prohibits retaliation against an individual who "has opposed any act or practice made unlawful by this chapter or . . . made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). The *McDonnell Douglas* burden-shifting scheme applies to ADA retaliation claims. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). To establish a *prima facie* of retaliation under the ADA, a plaintiff must establish that: (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the adverse action and the protected activity. *Lucas v. W.W. Grainger*, 257 F.3d 1249, 1260 (11th Cir. 2001). And disability retaliation claims require a plaintiff to meet the heightened "but-for" causation standard. *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 767 (6th Cir. 2015) (applying but-for causation standard for Title VII retaliation claim, under *Nassar*, to ADA retaliation claim); *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 454 (5th Cir. 2013) (same); *Savage v. Secure First Credit Union*, No. 2:14-cv-2468, ___ F. Supp. 3d. ___, 2015 WL 2169135, at *4 (N.D. Ala. May 8, 2015) (same).

Defendant first argues that Schoebel did not engage in protected activity because taking FMLA leave is not statutorily protected under the ADA. In her Second Amended Complaint, Schoebel alleges that her termination "was based upon Plaintiff's exercise of rights protected by law." (Dkt. 16, ¶ 37). In her opposition to Defendant's motion, she confirms that she is relying on her FMLA leave as protected activity (Dkt. 41, p. 20) ("Plaintiff engaged in a statutorily protected activity when she sought a reasonable accommodation in the form of leave from work from Defendant for her pre and post-surgery treatments and recovery. These requests for leave constitute a good-faith, reasonable belief by Plaintiff that her actions, including her various requests for leave, were protected.").

"[T]o satisfy the first element of the *prima facie* case, it is sufficient that an employee have a good faith, objectively reasonable belief that his activity is protected by the statute." *Standard v. A.B.E.L. Servs., Inc.*, 161 F.3d 1318, 1328 (11th Cir. 1998). And a request for accommodation constitutes protected activity under the ADA. *Id*. A request for leave "might be a reasonable accommodation in some cases," so long as the leave request is not for an indefinite leave. *See Wood v. Green*, 323 F.3d 1309, 1314 (11th Cir. 2003); *Santandreu v. Miami Dade County*, 513 Fed. App'x 902, 905 (11th Cir. 2013). Here, Schoebel's leave request was for a definite period. Accordingly, she arguably had a good faith, objectively reasonable belief that she was entitled to a reasonable accommodation under the ADA.

Defendant alternatively asserts that Schoebel did not have an objectively reasonable belief that she was entitled to a reasonable accommodation because an employer is not required to provide accommodations to an employee who is "regarded as" disabled. *See* 29 C.F.R. § 1630.2(o)(4) (specifying that a covered entity is not required to provide a reasonable accommodation to an

individual who meets the definition of disability only under the "regarded as" prong). Defendant further maintains that Schoebel has not demonstrated that she was "actually disabled" under the first prong of the disability definition.

Without reaching the question of whether Schoebel was actually disabled, there is sufficient record evidence to allow a reasonable factfinder to conclude that Schoebel had a good faith, objectively reasonable belief that she was actually disabled. For instance, Schoebel testified that she believed that she was disabled prior to her surgery. (Dkt. 31 at 20-21). She also testified that she was not able to eat or drink without having pain, had extreme heartburn and nausea, suffered from "pretty much constant" pain, required surgery to remove her gallbladder and reposition her stomach, and even after the surgery, had to be careful about what she ate. (*Id.* at 21-22, 25-26, 32-33). Under the more lenient standard of the ADAAA, this testimony suffices to show that Schoebel had at least a good faith, objectively reasonable belief that she was substantially limited in the major life activities of eating and drinking. 29 C.F.R. § 1630.2(i) (providing that major life activities include eating and the operation of a major bodily function, including digestive functions); *Amir v. St. Louis Univ.*, 184 F.3d 1017, 1027 (8th Cir. 1999) (holding that drinking is a major life activity); 29 C.F.R. § 1630.2(j)(1)(vi), (5)(iv) (explaining that a disability is assessed without consideration as to the ameliorative effect of behavioral modifications or other mitigating measures).

As to the causation element, Defendant argues, as it did in connection with Schoebel's FMLA retaliation claim, that Schoebel's intervening acts of misconduct sever any causal connection between her protected activity and termination. For the reasons discussed with respect to that claim, Defendant's causation argument is persuasive. Where, as here, it is undisputed that Schoebel's emails were the proximate cause of her discipline, and ultimately her termination, she fails to satisfy

13

the third element of a *prima facie* case of ADA/FCRA retaliation. *Stewart*, 117 F.3d at 1287 (holding that no inference of causation was available where the employer's reasons for terminating plaintiff were undisputed).

Accordingly, Defendant's motion for summary judgment is granted as to Schoebel's ADA and FCRA retaliation claims (Counts IV and VI).

Accordingly,

(1) Defendant's Motion for Summary Judgment (Dkt. 30) is **GRANTED** *in part* on Plaintiff's FMLA interference claim (Count I), FMLA retaliation claim (Count II), and ADA/FCRA retaliation claims (Counts IV and VI).

(2) The Court reserves jurisdiction on the balance of the Motion pending supplemental briefing as directed.

**DONE AND ORDERED** this 10th day of July, 2015.

*/s/ James D. Whittemore*

**JAMES D. WHITTEMORE**
**United States District Judge**

Copies to:
Counsel of Record

14